Good morning. I would like to reserve eight minutes. How long? Eight minutes, please. Eight minutes, okay. Well, that's aspirational, but we'll see how it goes. Thank you. We'll give you something. May it please the Court, Counsel, Kelly Rudd along with Erin Olson here today on behalf of E.J.T. Like every other state in the nation, Oregon has laws mandating the report of child abuse. Oregon laws go further and require both cross-reporting and investigation into the nature and the cause of the abuse. Sheriff's Deputy Anderson took neither of those steps required by Oregon law. No cross-report, no investigation. Based on a brief glance at E.J.T. and a third-hand conjecture from Mom, he left the hospital and told dispatch to give the call to tribal police. Tribal Police Officer Arnfard was the second police officer dispatched to St. Charles Madras Hospital to investigate abuse of E.J.T. Officer Arnfard was certified under Senate Bill 412 and had full state law enforcement authority. Once somebody is certified under Senate Bill 412, does that mean that a tribal police officer has an obligation to investigate non-tribal crimes? I believe he does, Your Honor. Every time? As a mandatory child abuse reporter in Oregon, I believe he does. So you believe that any time that a tribal police officer receives a report of child abuse, that tribal police officer has an obligation to pursue it to the end, regardless of whether or not the perpetrator is a reservation member or lives on the reservation? I believe he's like other mandatory child abuse reporters under Oregon law, and he has a 24-7, 365 obligation to report child abuse. Would that mean that in this respect, at least, the tribe is governed by Oregon law? No. I don't believe so. And what would be the practical distinction? Well, the individual officer, Officer Arnfard, is governed by Oregon law. Well, the individual officer is acting as a tribal law enforcement officer, isn't he or she? I believe he's acting as both, and I say that with Bressie v. Ford in mind, which is a case where the Ninth Circuit We conclude that a roadblock on a public right-of-way within tribal territory established on tribal authority is permissible only to the extent that the suspicionless stop of non-Indians is limited to the amount of time and the nature of the inquiry. I think that's an accurate quote, Your Honor, and somewhere And it's from Bressie? Yes. So wouldn't that suggest that there are limitations on what a tribal police officer should do or is required to do? I believe what it says next to that in Bressie is, we look to the function that the cross-authorized tribal police officer was undertaking, and that's And so you look at what they actually did? You look at what they actually did? What did Officer Arnfard do here that suggests that this was more than an investigation of a tribal crime? He reacted to EJT presenting off-reservation at St. Charles Madras, EJT, a non-enrolled person who resides off-reservation He didn't do anything until EJT arrived on the reservation, did he? No. In our view, it's premised on what happened when Arnfard responded to dispatch and EJT was held based on Arnfard's direction off-reservation at St. Charles Madras Where can you show me that in the record? I can see that the hospital, from the record, I can see that the hospital didn't let him go until they told hospital personnel that they would take him to Warm Springs. But I can't see anywhere in the record where it says that EJT directed the hospital not to let him go. I just want to make sure I follow you, Your Honor. You can't see in the record where Arnfard told the hospital not to let them go? Correct. And even if he did, how does that result in an off-tribal investigation? Well he's authorized as a cross-certified officer under Oregon law. He carries Senate 412 authority and he is directing, he is directing in something like investigative detention what happens to the child. But see, that's going to his question though. Where in the record does it say, or does it show, that he was directing them, ordering them to not release until he went to... I believe what we have in the record is statements from mom and grandma. And I believe we have... They wouldn't be admissible though, would they? I haven't... I've looked in the record, and so if it's in the record, I would be glad to have you tell me. But I have. Nurse Meller advised mother and grandmother that if they promised to take EJT down to the Tribal Police Department to speak with Officer Arnfard, they could leave the hospital. Well, in the record, and I will find it when I sit down, I believe there is Officer Arnfard under oath acknowledging that EJT was held at the hospital based on his direction. We also have statements in the record from mom and grandmother that when they did check with the sheriff and asked, do we have to go down to the reservation, and the sheriff said you better... The Jefferson County Sheriff. The Jefferson County Sheriff. That when they presented at the Tribal Police Station, they were told by somebody in the waiting room that you're not free to leave. They said we want to leave, and they said you better not. And so you're attributing that to Officer Arnfard? I am attributing it to Officer Arnfard, and I think it's something like investigative detention that we see in a DV context. Let me ask you this. Is it possible for a Tribal Police Officer to investigate a non-tribal abuse off the reservation? Yes, particularly if they're cross-authorized, and I think Brescivice Ford speaks to that. Well, do they have to be cross-authorized to investigate a tribal crime off the reservation? I'm not sure I could speak to that definitively, generally, Your Honor. And I think the... Well, generally, give me your best bet, then, on this case. In the confines of this case, would it have been possible for Officer Arnfard to investigate an on-reservation abuse off the reservation? Within the confines of this case, yes, and I'm saying that for two reasons. One, I believe in Officer Arnfard's deposition, which is in the record, he says he regularly goes to St. Charles Madras to respond to reports. And he also speaks about his two hats and his law enforcement authority in the State of Oregon, which extends beyond the reservation. Am I addressing your question? No. I just want to be mindful of the amount of reservation time you asked, and I'm dominating this and it won't give my colleagues a chance, but I want to ask one more question.  Assume for a second, and I'm not saying this is so, but assume the panel determines that Officer Arnfard was acting at all times, affirms the district court in its determination that Officer Arnfard was acting at all times as a tribal, investigating a tribal crime. If then we were to find also that as to Officer Anderson, you do not state a discrimination claim, should we answer anything, should we answer any of the rest of the questions posed by this appeal? You are asking me to assume, one, that Officer Arnfard was acting as a tribal police officer and not enforcing Oregon law, and number two, that Officer Anderson, that you haven't stated a claim that the district court was correct when it dismissed your discrimination claim against Officer Anderson. If that's true, all the remaining state law claims we exercise only through supplemental jurisdiction, don't we? Yes, and our position would be that the district court still has the same supplemental jurisdiction that it had and was exercising when Judge Hernandez did the sui sponte dismissal. Sure, and I'm not arguing that there is supplemental jurisdiction, but the question is, as it pertains to the remaining Oregon law, isn't that a question that hasn't yet been decided by Oregon courts, despite the fact that a separate question has already been certified in this action? The remaining question is whether there's a negligence claim? Well, it isn't whether there's a negligence claim, that remains, but it is a state law question, as is the question of whether or not we should consider a young child of two and a half years old as being incapacitated for purposes of the protective statute. The abuse of a vulnerable person statute?  Our position is that the abuse of a vulnerable person claim that was dismissed . . . Well, you have no state law that says that's a kid, that's a little child, that that little child is impaired under the statute. You have no case law to support your theory that it's a violation of that statute, right? You're asking us to interpret the statute to say that a small child would be impaired, correct? We're asking you to interpret the plain language of the statute to extend to children . . . Right, but you have no Oregon case law that has interpreted it that way. We've got the references in the statute that incorporate crimes against children. Right, but you also have other things in the statute where they specifically deal with abuse of children, and obviously your friends on the other side are arguing that we're talking about a completely different situation in this. So that's not a question that was answered. We can answer that question. We can interpret the statute, and it would apply to this case if we didn't publish. But by the same token, that's not binding on Oregon state case law anyway, right? I take the point that there hasn't been perfect clarity from the Oregon Supreme Court so far on that point. There is herring, Your Honor. I want to kind of go to . . . I have a couple of questions. This is a tragic case, no doubt, and that we see the tragedy of this particular case. This child now, I mean, after this incident, what, six weeks later, got beat within an ounce of his life, and is really pretty . . . what's the condition of the child right now? Catastrophically brain injured. The last time I had a report, he accomplished a milestone nobody thought he would, which was being able to roll over. So he's basically just in terrible shape. And my understanding is the perpetrator of these crimes was a boyfriend that was living with the mother and the grandmother, correct? Yes, Your Honor. And it's also my understanding that the mother and the grandmother never said to anyone at the hospital or any of the officers that there was a boyfriend that was taking care of this child, too. There was no investigation undertaken by Anderson that would have allowed them to . . . Well, but the mother said she was having problems with the father on the reservation, and so she said, well, he must have done it. But no one says, hey, there's another person that's taking care of this kid who's the boyfriend, who in fact my understanding now, he's pled not only to the incident of the genital bruising and everything that we have here, he's also pled guilty to a second incident of when he beat the child with, you know, I like to think that it's fortunate that he survived, but it sounds like he survived in a terrible condition. So that's undisputed at this point. He's doing, what, 144 months for all of that? The perpetrator, the abuser, is in jail. Yes. So let me just mention the elephant in the room. The mother and the grandmother are taking care of this child on a daily basis. It's a little tiny child who we know was wearing diapers, and any of us that have had children or anything along these lines know that you regularly see children's bodies when you're caring for him at that particular age. The mother and the grandmother mention nothing about this boyfriend, who we now know was in fact having access to the child. They continue to leave the child. Why isn't all of this, all these legal theories that we're questioning, and just an effort to, the mother and the grandmother did not protect this child. Undisputed. This child, this, no one protected this child is what you're saying, and the boyfriend certainly abused the child. Why, but now you're asking that the officers, the tribal officer, the other officer, and that the county somehow had animus and didn't, of a discriminatory nature, that they should be responsible for what happened to this child. Is that right? Is that the elephant in the room here? I believe you've told me it is, Your Honor, so I could do my best to speak to it. It would seem that I've identified three people that are significantly more responsible here than the people that you're trying to hold responsible. Is there a question there to me, Your Honor, or should I? It's just like we're saying, if the tribal officer was only acting as a tribal officer, then other issues fall aside. The vulnerable, well, it was certified to the Supreme Court whether you could bring a private action on the mandatory reporting. They said no, but you still are arguing that as part of your negligence claim, correct? Yes, what I would say primarily in response to that is, Oregon law requires investigation and cross-reporting and a methodology of investigation that was never undertaken. And if it had been, we believe you can see on this record that this abuse would have never happened. And I would direct the court to Well, the abuse never would have happened if the mother and the grandmother had protected this child and the boyfriend had not beat the child, you know, almost to death. That never would have happened. Yes, and if in fact someone knew that, but you have to establish that somehow what they did, it falls short. Well, what we are saying, what I am saying, Your Honor, is that neither officer did the investigation required under Oregon law or made the cross-report under Oregon law. And if you look at the deposition of Faith Decides, which is in the record, you can see the causal connection about the failure to cross-report. Does that lead us back to the statute which imposes a reasonable person standard? Do we impose a reasonable law enforcement officer standard when the statute says a reasonable person standard? Do you know what I am talking about? Section 5? I am basing it primarily on the text of the child abuse reporting laws, Your Honor, and I should reserve my time. Let me find out if my panel doesn't have additional questions right now so you can reserve the balance of your time. Thank you. All right, so who are we hearing from first? Please state your appearance at the podium. Good morning. Jonathan Henderson for Appellee Arjang Aryan Fard. I've got seven minutes. I'm going to skip around a little bit. I want to give you an update first. This matter is in the tribal court. The tribal court has started moving this case along at least about two weeks ago, and there was a hearing in a month. So it's not completely exhausted, but it is doing it. Yes, it's moving along in the tribal court now. So nobody has ever really disputed in this case that Oregon law would not apply to a tribal officer investigating a tribal crime on a reservation. That would be an intrusion into tribal sovereignty by a state. There's no dispute about that. The jurisdictional hook here was always this Senate Bill 412, and below what plaintiff argued was once you're certified, you're always certified and you're always on, and it doesn't matter where you're at or what you're doing, you're acting as a state officer, and therefore jurisdiction against you would be proper in state court and under supplemental jurisdiction in the federal court. That argument was rejected by the district court in a case called Weaver v. Gregory that this court affirmed in 2022 or 23. So plaintiff has changed their theory on appeal and now says there's various reasons why you should infer that Officer Arian Fard put on his Senate Bill 412 hat even though he says, I never did that, I never had any reason to do that. I was told, and this is undisputed, I was told only that I was investigating a potential crime committed by a member of the tribe on the reservation. I had no reason to do anything else. And so those arguments are, first, this coercion argument where plaintiff says now that Officer Arian Fard somehow coerced EJT and his family to come to the reservation. Well, he said she's going to pull the record. Do you know anything about the record? It's not there. Okay. So what happened is Nurse Meller says, look, there's injuries, we need to report these. Contacts Deputy Anderson. Deputy Anderson asks, where did this happen? And the answer was it happened on the reservation by Dad. It turns out that's wrong. It turns out that's wrong. There's evidence in the record to suggest that they knew that was wrong. And then she contacts Arian Fard, Officer Arian Fard. Arian Fard says, look, I am busy. I'm the only one here right now. I can't make it to the hospital yet. It's going to be a long time. And the evidence shows that Mom and Grandma are with EJT and he's getting restless and they want to leave. And so they say, we want to leave. And Nurse Meller says, well, not unless you agree to go make a report with Arian Fard. And they do that. That's not Arian Fard coercing anybody to do anything. He just indicated that there was something in the record where Arian Fard apparently directed in some way? I don't think that there is anything in there. Not to my memory. Moreover, it's not as if Arian Fard can somehow, that does not indicate an invocation of state law enforcement authority. Even if he did say, hey, can you hold them there until I get a chance to come down? Because to answer Judge Snow's question, yes, they can go off reservation to investigate an on-reservation crime. They do that all the time. They did it long before Senate Bill 412. They did it specifically at this hospital because victims of crimes on the reservation go to that hospital. There is no hospital on the reservation. And so it's common for law enforcement to travel from the reservation to the hospital to make reports regarding crimes. They do that all the time. He couldn't do that here because he was understaffed. So the issue below was solely whether or not he ever put on his 412 hat. And that is a jurisdictional issue, and it's subject to a deferential clear air standard. And the trial court found, after asking the parties specifically, lifting a stay on discovery, and asking the parties specifically for questions regarding this issue, namely, what did Officer Arian Fard know or what was he told? And the parties went out and conducted extensive discovery. It took a year for this briefing and the discovery and to submit voluminous amounts of evidence back into the trial court. This is the evidence that was omitted from the excerpt of record in the opening brief where we put in and said, look, here's the testimony, and it's undisputed that he at all times thought he was investigating whether Thomas, a member of the tribe, had abused the child while he was at Dad's house on the reservation. And what he learned was that Thomas said, no, I think he was injured when he was playing on a table. I don't know. I didn't abuse him, but he was playing on a table and he took a tumble. And Arian Fard concluded Thomas did not abuse him. So did – the mother had taken the child for injuries previously. That's right. And wore the arm – an elbow situation.  Yes. And did any of the officers know any of that or do they – No. Is that undisputed? I think that's undisputed. They did not know that. And like I said, what the record shows is kid goes to Thomas' house, comes back, no injuries, looks fine. The next morning, he's left the full day with Mendoza. And then the next day, Mom brings him to the babysitter and the babysitter says, he's got scratches on his face and he's got bruises all over. It was clear where this happened. But they never told any of the officers about the boyfriend that was living in the house and had had access to the child prior to going to the hospital. Never said that. And that is undisputed. And so Arian Fard had no reason to think he was investigating anything else other than Thomas for an on-reservation crime. And he never put on his hat. Now, that Senate Bill 412 hat is a discretionary authority to exercise state law enforcement powers. It's not a mandate that a tribal officer begin carrying out state law enforcement obligations at the tribe's expense. The whole purpose of that was to allow tribes to become a little bit more safe under the facts similar to what happened in the Kurtz case. So let me ask you this. If the district court found that Officer Arian Fard was not exercising state enforcement authority, if we agreed with that, I'm talking hypothetically because we don't conference on these cases until after oral argument, could we resolve all issues concerning Officer Arian Fard on the basis, on that basis, and if not, why not? You could. Because even on the assignments regarding the denials of the motions to amend, those claims would be subject to the same arguments. It doesn't matter if it's a statutory claim or a common law claim. If he was not operating under state law enforcement authority, there's no jurisdiction, there's no way to hold him liable under state law. Judge Snow, did you have a question? Yeah, and I'm sorry it's not going to be a very precise one. I don't have, and I thought I did, the precise Oregon statute number that cross-authorizes officers, tribal officers. But is Section 2 of that statute, which recognizes or does not seek to affect the liability of officers operating in their tribal capacity, did that exist at the time in 2017? I believe so. I believe so. So I think that those, certainly Senate Bill 412 had been passed, and I think that those were. I guess my question is this, has it been amended since it was passed to add in Section 2? I don't know the answer to that standing here, and I might defer to my colleague if they know. I don't want to put them on the spot, though. You don't know? I do not know. Okay. Do either of my colleagues have additional questions? No. All right, we've gone over your time. Thank you. Thank you, Judge. All right, so we're moving now to, would that be Mr. Newton? Correct, Your Honor. You have seven minutes, and you are, you're amicus representing the tribes, is that correct? Correct, Your Honor. Okay. Please proceed. Thank you. Good morning, Your Honors. Counsel, and may it please the Court, my name is Josh Newton. I represent the Confederated Tribes of the Warm Springs Reservation of Oregon. In amicus part of this appeal, the tribe appreciates the opportunity to participate in oral argument, to assist the Court and the parties understand the potential impacts of an appellate decision on the tribe. And its inherent sovereign authority to provide vital public safety and justice services on the Warm Springs Reservation. Specific to your question, Judge Snow, is there been any amendment to the statute? I am not certain. But even if there were, I don't think it could constitutionally affect the immunity and impact of a tribal law enforcement officer serving as a tribal law enforcement officer on the Warm Springs Reservation. So you're going to tell us what the parade of horribles are if we were to decide that he was not exercising, that he had the two hats on? Correct. All right. We fully agree that the record supports the notion he was acting solely as a tribal law enforcement officer for all the reasons the district court concluded and for the reasons that Mr. Henderson just explained to you. But we did want to take you down the path of what if he was wearing a Senate Bill 412 law enforcement hat or exercising that authority, what does that look like? And we think that requires a bit of a historical march through the tribe's sovereignty from treaty time to present and help the panel understand that the Warm Springs sovereignty is unique to itself and it's unique within the state and it's very unique on the Warm Springs Reservation because in the 1950s it is the only Indian territory in the state of Oregon that is exempt from Public Law 280 both for criminal and civil jurisdictional purposes. There is no civil authority that the state of Oregon can exercise on the Warm Springs Reservation to this day. Senate Bill 412 can't affect that even if the Oregon legislature tried to and it didn't and I'll explain why. So the Confederated Tribes of Warm Springs is a federally recognized, self-governing, sovereign Indian tribe. It's a legal successor in interest to the Indian signatories of the Treaty of June 25, 1855 with the tribes of Middle Oregon. Pursuant to the treaty, the tribe is reserved approximately 1,000 square miles, 640,000 acres of land for the exclusive use and occupation by the tribe and its members as a permanent homeland. Quite simply, Warm Springs is a large land-based tribe. Plaintiff EJT's late father, Andre Thomas, was an enrolled member of the tribe. You all know that. EJT himself is eligible for enrollment. That's in the record. There's one entity that did act to try to protect EJT well before this lawsuit was filed and that's the tribe itself when it intervened in the state ICWA proceedings to assert its interest in him as an Indian child eligible for enrollment in the tribe. What legal effect does it have that EJT is potentially an eligible member of the tribe but hasn't applied for or received tribal membership? In our view, for purposes of this appeal, none. But there's some confusion around whether EJT actually is authorized to commence a tort action in tribal court. The tribe's position is he's absolutely authorized under Chapter 390 of the tribal code, which I'll explain in a moment. But there's been a lot of ink spilled about EJT's status, and we think for tribal court jurisdictional purposes it's irrelevant. Because really the issue is whose conduct is to be adjudicated in tribal court. It's not EJT's conduct. It's Officer Arianfard's conduct. And it's Officer Arianfard does not dispute that he's subject to tribal court jurisdiction. Do you have a different view than your colleague that if we were to decide that Officer Arianfard was acting uniquely as a tribal court officer, then the exhaustion question isn't even one we should dwell on? I would agree that if he's acting solely as a tribal officer, the only place that his conduct can be adjudicated is tribal court. I believe that's true with Senate Bill 412 as well. Because that's what the Oregon Legislature, that was the choice the Oregon Legislature gave tribes, right? All the Oregon Legislature could do is create an opportunity for a tribe to opt in, to have its officers be authorized to enforce state laws. If the tribes chose to opt in, there were certain things that they had to choose. There was a bargain, a sovereign bargain. That bargain included having deadly force plan, you had to have some public record reporting obligations, some evidentiary obligations. But when it came to sovereign immunity and liability, the legislature allowed the tribes to use their own courts as the forum to adjudicate torts arising out of their officers' conduct while wearing a Senate Bill 412 hat. But doesn't the Warm Springs Code allow such suits to be brought not only in Warm Springs Court? No. The only court of competent jurisdiction is the Warm Springs Court for those claims. Okay. And so, and the reason for that, Your Honor, the code itself, you may say, is a little unclear on that point. But it actually... What about if I think it's explicitly clear but runs contrary to what you said? It says another court of competent jurisdiction, but there is no other court of competent jurisdiction because of Public Law 280. Public Law 280 makes it such that the Oregon State Courts are not courts of competent jurisdiction. So you'd have us interpret that phrase to be absolutely meaningless? In this context for this case. That doesn't mean there aren't other torts. That tort provision applies to other torts, right, not just Senate Bill 412-related torts. For purposes of other torts, there might be a court of competent jurisdiction. It might depend where on the reservation as well. If you're on a public highway that's under State of Oregon jurisdiction and you're still within the exterior boundaries of the reservation, it's possible that there is a different jurisdictional basis. It's not the case here. You're at the Warm Springs Police Department, which is tribal land within the exterior boundaries of the Warm Springs Reservation. The only place that Officer Arian Farr's conduct can be adjudicated if there's an alleged tort is the Warm Springs Tribal Court, and that's where the case is pending now. You have 35 seconds. Do we have any additional questions? We don't. Okay, thank you. Thank you. Good morning. Robert Franz for Jefferson County. And Anderson, I have six minutes. Everybody else got seven. Well, don't go the unfair thing with me. You guys divided your time, okay? You lost that battle before you came to me. So waste no more time on that. It's not if you want sympathy, hit the dictionary. But I was voted this way because I speak the fastest. All right. So Congress may, for a position in Deputy Anderson's position, Congress may, Deputy Anderson, use race as a factor to decide his jurisdictional limits. And as you know, police officers only act within their jurisdictional limits. Well, wholly independent of that, what about Appellant's argument that Deputy Anderson had an obligation to cross-certify his report or to cross-report? He didn't handle the investigation. Well, he became aware. He became aware of it and gave it to another law enforcement agency, and that law enforcement agency is a law enforcement agency. But it is a law enforcement agency which potentially is not at all bound by Oregon law. The statute isn't distinguished between law enforcement agencies. He did not have the jurisdiction. It doesn't matter if the statute doesn't apply, does it? Okay. I'm talking about what statute you're talking about, the mandatory reporting? Yes. Yeah. The mandatory reporting statute would apply to him for an investigation he did on a child abuse complaint he has within his jurisdiction. So he had no jurisdiction. He only had reasonable suspicion to believe there's one suspect. Once he found out what Congress says what you do is, take a look. I'm not sure that Appellants are arguing that, but they do argue that he had an obligation to do more than to report to the Warm Springs Tribal Police Department. And I disagree, okay, for the simple reason he didn't have jurisdiction over the case in the first place. Does the reporting statute depend upon jurisdiction? It depends on your agency that does the investigation. I'm sorry, I just don't know. Does the reporting statute create an obligation in anyone who has a responsibility to care for children to report, or any one period? Or does it create a reporting obligation only in police agencies that investigate? No, it has a whole list of people, attorneys, doctors, school teachers. And do you say that Officer Anderson falls outside of that list? He's within the list for something that would be within his jurisdiction to investigate. So if a doctor finds out that another doctor's patient is being abused, that doctor has no obligation to report the child abuse? The doctor has no obligation. Whether or not the patient is the doctor's patient? It doesn't matter whether it be the doctor's patient. If the doctor had knowledge of a child abuse, he'd be a mandatory reporter. So how is that distinct from Officer Anderson? The doctor and Officer Anderson don't have to report child abuse that took place in Germany. That took place in France. That took place on a sovereign nation. Separate question for you. Should we certify to the Oregon Supreme Court what it means to be incapacitated? The plaintiff asked for that at the lower court. To answer your last question many minutes ago, what if we found that there's no violation of Section 1983 by Anderson and we find that the district court correctly decided the tribal issue? Can we dismiss the case? Yes. Because you're exercising supplemental jurisdiction and, in fact, you can dismiss it. Well, let's just say hypothetically that Officer Anderson just did nothing, that he didn't even refer it to someone to do. Hypothetically, if he said he's called and he says he did nothing and didn't call, didn't refer it to the tribes, didn't do anything like that, could he be liable then? No. Because it's still not within his jurisdiction. Well, but wouldn't it be his job at that point at least to put it in someone's jurisdiction if as an officer he became aware? It's not a satisfactory answer really to think that this poor little human being that had all of this going on and I think one thing we can hopefully all agree on is this poor little human being had nothing to do with what happened to him. He was not protected. That being said, if Officer Anderson becomes aware of it, he knows he doesn't have jurisdiction, but he doesn't even notify who would have jurisdiction, could that create some liability? I know those are not the facts here, but I'm just saying hypothetically. And I say hypothetically no. And to answer your last question, sir, do you certify the Supreme Court, you can certify the Supreme Court the issue on vulnerable person if that's what you're asking too. You asked me prior to that, should we certify this? Well, I think if an officer is notified of abuse, I don't think they can just do nothing. I mean, he doesn't have jurisdiction to investigate, but if it just stops there and did nothing, that's not a real satisfactory answer. In other words, is there a requirement to report, just report? Is there a requirement to report? Again, not your jurisdiction, but is there a requirement under this statute to report? Not when you refer it to another agency. Other agencies do this all the time out of county. You refer it to the agency with jurisdiction. This is a common practice. Well, you're saying that was his job, but let's say he didn't refer it to another agency, just let it said, you know, I'm going to just go home. I'm just going to let it lie. I'm not going to. With all due respect, that's not the facts of this case. I know it's not. I'm just asking hypothetically. When everyone says with all due respect, we know that's not going to go well. Okay. Hypothetically, if those were the facts, I know they're not, would that be would he have to do something? And I say no, because it's out of his jurisdiction. Where in the statute does it make such a statement? It doesn't. That hypothetical is not in the statute. It doesn't make such a statement. There's no case. I don't know of any officer that did it. I don't know of any hypothetical. I don't know how to answer that. We just are disagreeing on a hypothetical question that did not happen. Okay, so does the statute require more than what I believe we know the facts of this case to be, which is that Officer Anderson made sure that the complaint was transferred to the Warm Springs Tribal Court? Does the statute require more than a report to the applicable law enforcement agency? And I don't think so, because if you look at the statute, the statute says causes an investigation to be made. It doesn't say investigation. The officer causes an investigation to be made. Anderson caused an investigation to be made. The investigation was made. It was unfounded. And EJ's father, the suspect, was found innocent, and it's undisputed he was innocent. So the system worked as far as the information we had, the system worked. Well, the facts that you have, I understand your argument. I just don't understand how you would say he wouldn't, that he would have to at least pass it off to someone. That doesn't, I find that, that's a bridge to, I don't have to decide that. But just think about it. Here's my final statement. I changed my mind. Yes, he would be liable. And now I agree with you. Well, your credibility is in question at this point. But let's, I think we have no further questions, I don't think. Thank you for your argument. Rebuttal. Yes, a couple things I'd like to follow up on and make sure I'm as clear as I can be about on the record. Anderson did have jurisdiction. It's a non-enrolled child, domiciled off reservation with mom, who presents at the emergency room at St. Charles Madras. He derived a misimpression based on glib information that the child had crossed through the reservation with dad last weekend. Does he have an obligation to do more than report to the Warm Springs Police Department? Yes. He's got an obligation to investigate until he determines the nature and cause of the abuse and to cross report. Let me be more specific. Does he have an obligation under the statute to report to anybody other than the Warm Springs Police Department?  He's got an obligation to cross report to Child Protective Services. And you can see what would have happened if he did if you look at the deposition of Faith Sides. And you can see what the investigation he never undertook would have looked like by looking at the deposition of Steve Webb, who does that investigation after the November 2017 abuse to EJT. Counsel, I'm still waiting for the AR site that you were going to give us. Yes. I'm at 4ER918. This is the deposition of Officer Arendvard. The question from Ms. Olson is, do you remember about the second call with Nurse Meller, the nurse at St. Charles Madras? That would have been that I told her that I couldn't break away and come up to the hospital and ask if they could come down to Warm Springs in order to take the report. Question from Ms. Olson. Did you understand that the hospital was holding EJT and his mother and wouldn't release them until you were able to follow up with them? Answer. Well, I asked them if they could come down to Warm Springs. Question. Did you understand it? And that I understood that they were safe. I apologize for interrupting. No, it's all right. I interrupted you too. Let me try again. Did you understand that the hospital was holding EJT and Caitlin wouldn't allow EJT to be released until you followed up with them? Answer from Officer Arendvard. I guess the answer to that would be yes, I understood that. But that doesn't say that Officer Arendvard was holding him. It says the hospital was holding him. It says that in our view, our position, Your Honor, is he is under color of state law at that point, directing these people that they can't leave. It's a kind of investigatory detention, I believe, and they're following his direction, and the record is clear that they don't want to. They don't want to go down to the reservation because of personal reasons and family background. But that's reasonably clear on the record. The other thing I'd like to speak to was a question earlier about what, in the abuse of the vulnerable person statute, would allow the court to acknowledge the claim and to reverse and to disagree with Judge Hernandez's determination. And I would direct the court to ORS 124.100 subpart 5, which says, an action may be brought under this section against a person for permitting another person to engage in physical and financial abuse if the person knowingly acts or fails to act under circumstances in which a reasonable person should have known of the physical or financial abuse. And I asked you a question about that earlier. It imposes, the statute imposes a reasonable person standard, does it not? Well, it says reasonable person, but I think in the circumstances of this case, where we're talking about police officers, it has to be measured against what the police officers are trained at the police academy and the methodology they're supposed to engage in. And in that methodology, it's clear that parents and boyfriends. I understand the argument. The statute does say reasonable person, though. Do you want us to refer this to the Oregon Supreme Court? Do you want us to certify it? I would rather be certified to the Oregon Supreme Court than thrown out with no case on behalf of EJT, Your Honor. All right. I think your time is up. We don't appear to have additional questions. Thank you, both sides, for your argument in this matter. This will stand submitted. This case is in, this court is in recess until tomorrow at 9 a.m. Thank you.
judges: CALLAHAN, MENDOZA, Snow